LANDAU v. LANDAU.

(Division A. March 20, 1939.)

[187 So. 224. No. 33577.]

John W. Crisler, of Clarksdale, for appellant.

Brewer & Montgomery, of Clarksdale, and **Armstrong, McCadden, Allen, Braden & Goodman,** of Memphis, Tenn., for appellee.

48

Argued orally by **John W. Crisler**, for appellant, and by **Fred Montgomery**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

The only witnesses were the parties litigant. The record is in an unsatisfactory condition, but the matters stated in this and the next two paragraphs may be said to be undisputed. The parties are German Jews. Appellant came here nearly forty years ago and resides at Clarksdale, in this State, where he is engaged in the mercantile business. Appellant is the uncle of appellee. The latter arrived in this country in November, 1934, and was twenty years of age at that time. During the summer of 1935, he came to Memphis, Tennessee, where he has

since resided. Soon after his arrival in Memphis he opened an account in a bank of that city, wherein he deposited his small personal savings. Sometime thereafter, but before November 30, 1935, he received from his father, then in Germany, a remittance, via Holland, apparently in current bankable exchange in the sum of $1436.66, which the son deposited in his said bank account to his personal credit on March 6, 1936. What was done with it between the time of its receipt and the deposit in the particular bank and account aforesaid does not appear.

The father, also, was planning to come to the United States, and to do so he had to satisfy the American consular authorities in Germany that he would not become a public charge, and this could be done by showing that he had available money or property here, or by affidavit of responsible residents of this country pledging support of him on his arrival. The son was willing, without regard to any question of ownership of the money sent by the father, to use it or any necessary part of it, temporarily, in aid of getting his father to this country; but it was the son's understanding—and there is not a word to show that the father understood otherwise—that it would not be available to place the money, or any part thereof, to his father's credit because of the danger that the German authorities, by opening the mails or otherwise, would find out that the father had sent money out of that country, and regardless of the purpose of that remittance, might deny the father the privilege to leave Germany until all the money sent away by him should be returned to that country. This subject was discussed between appellant and appellee after the arrival of the money into the son's hands, and manifestly this was the subject under consideration in the letter from the son to his uncle, which will be hereinafter mentioned. The father did succeed, late in the summer of 1936, in getting to the United States, on an affidavit of support, but who made the affidavit is not disclosed in the record.

The father while yet in Germany had borrowed from appellant a sum in excess of the $1400 here involved, which appellant asserts had not been repaid, but the son was unaware of the existence of this debt, if it existed, and his uncle made no mention of it. On March 10, 1936, appellee, the son, delivered to appellant a check on the aforesaid bank account for $1400, the full proceeds of which were received by appellant. During the latter part of that year, the son demanded of appellant the return of the amount, which appellant refused on the ground that the money belonged to the father and that appellant had a right to apply it upon the father's debt to appellant. On July 2, 1937, the son instituted this suit against appellant, and therein appellant interposed by plea, and sought to maintain, an offset to the effect as stated.

The disputed facts are as follows: The son testified that the money was his property; that it was sent to him as a gift from his father in consideration of a similar gift theretofore made by the father to his daughter, appellee's sister. Appellant testified that when the money came, the son approached him and told him that he had received his money from Holland for his father's account, that it was his father's money; nevertheless that he, the son, wanted to give the money to appellant, his uncle, the latter to do with it as he pleased; and that being thus authorized to do with it as he pleased, appellant had credited it upon the father's debt to him, as has already been mentioned. The son denied that he told his uncle that the money belonged to his father, and, although admitting that the earlier discussions of the subject had been in regard to some sort of transfer to aid his father's plans to leave Germany, he averred that the later arrangement under which he delivered the $1400 to his uncle was with the understanding that the money was to be invested for the son's sole benefit in a real estate mortgage, so as to earn interest, and that his uncle had shown him a particular piece of real property in Clarks-

dale in which the money could be so invested. In this connection it may be mentioned that the uncle did not deny the circumstance of his having shown this property to the son and the proposal to invest the money therein.

It will be noted that the appellant does not anywhere contend that the money belonged to the son and that there was a gift to him by the son. He could hardly have risked going to a jury on the proposition that a young man, just beginning life in a new country and who is shown to be of a thrifty disposition, would give away practically all he possessed to an uncle who had long been in the new country and had already become a substantial property owner. On the contrary, the position of appellant is that the money belonged to the father, and that the son was holding it as a mere trustee for his father with no beneficial interest whatever in the son. That, therefore, the son in the suit now before us would be, at best, only a nominal plaintiff, and thus appellant should be allowed to setoff against the $1400 demanded, the larger debt which he asserts the father owes him; and it is of the action of the court in denying the setoff and in granting a peremptory instruction for the son that appellant complains in this appeal.

Accepting as true the testimony of appellant and construing it with the facts and circumstances which are undisputed, and keeping in mind that the burden of proof was upon appellant as respects the contentions made by him, the most that can reasonably be made out of this record in behalf of appellant is that the money sent by the father to his son in the form of current bankable exchange, was subject to the son's disposal at discretion, that is to say, an unrestricted use and disposition, until such time as the father should succeed in reaching this country and should call upon the son for a repayment of the amount—in which connection we again call attention to the fact that it is evident that it was the son's understanding, and without a word in the record to show that the father understood otherwise, that no part of this

money should, in the meantime, be deposited to the credit of the father or in any way so handled as that it could be openly traceable to the father as the original remitter. All this created, at most, as between the son and the father simply the relation of debtor and creditor, and not that of trustee and cestui que trust. A. L. I. Restatement, Trusts, Sec. 12-g.

Appellant by his own evidence has inescapably tied himself into the above stated legal result. He relies largely upon a letter written to him by the son on November 30, 1935. In this letter the son said: ''If you wish, I shall naturally send you the money, which is subject to my disposition.'' As already mentioned, it is the appellant's own testimony in chief that the arrangement between him and the son, the authority conferred upon him by the son, was that appellant should do as he pleased with the money. This would be a power and authority of unrestricted use and disposition which when conferred by the son, if conferred, presupposes, as an essential to its exercise, a like power on the part of the son, unless it be supposed that the son violated his father's instructions, which cannot be assumed because the record is utterly silent as to any instructions by the father which would thereby be violated. Thus appellant has himself asserted a power in the son of unrestricted use and disposition —a position destructive of the other contention now urged before us that the money was held by the son as trustee for his father.

The same result follows upon another view. As already disclosed, appellant relies solely on three alleged expressions of the son as admissions. One is that the son orally said ''that he got the money from Holland for his father's account;'' the second is that the son orally said ''it was his father's money,'' and the third is that the son said in a letter ''if you wish I shall naturally send you the money, which is subject to my disposition.'' Taking these together, unless they are to be strained— which as hereinafter shown the law does not allow to

be done—they mean no more than that the son was holding the money in the manner of a depositary, but at the son's disposal in the meantime, a like sum to be returned to the depositor on a future call therefor.

A depositor in a bank or with a merchant or other person will speak of the amount of the deposit as his money or as being held for his account—and in a sense, so it is—and the depositary will likely use similar terms; but loose and equivocal expressions are not sufficient to denote a trust, in favor of him who has the burden of proof. To constitute an express trust there must be either explicit language to that effect, or circumstances which show, with reasonable certainty, that a trust was intended to be created. 26 R. C. L., p. 1180, sec. 18; 65 C. J., Trusts, secs. 21, 47, and compare Bush v. Bush, 134 Miss. 523, 532, 99 So. 151.

The case, therefore, so far as the present record is concerned, is simply that the son is and was, in any event, no more than debtor to his father; the latter was debtor to appellant and he in turn was debtor to the son—a three-cornered setup, void of the element of mutuality between plaintiff and defendant, which is necessary to a setoff.

Affirmed.